UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BILLY RANSOM, MICHAEL JOSEPH HAYES, MARK HAAF, DANIEL BRIAN BENSON, LEROY BLEDSOE, DAVID A. RIECK, HERMAN PEARSON, JEREMY PEARSON, CLINTON PEARSON, TIMOTHY RETHWISCH, DAVID PRESTOLT, ROGER ENGLAND, ROBERT REFFER, CHARLES L. DRAPER, DANIEL WINTER, MARK JURGENSEN, CLAYTON ELLIS, PAUL SKAGTER, JOHN KEM, RICHARD STONE, DANIEL BESS, and LEE VAN BOVEN, <br><br> Plaintiffs, <br><br> v. <br><br> VFS, INC., WARREN AMUNDSON, and DONNA M. WALRAVEN, <br><br> Defendants. | Civil No. 12-1197 (JRT/AJB) <br><br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT** |

Paul O. Taylor, **TAYLOR & ASSOCIATES, LTD.**, 900 West 128th Street, Suite 104, Burnsville, MN 55337, for plaintiffs.

Eric J. Steinhoff and Brian A. Wood, **LIND JENSEN SULLIVAN & PETERSON, PA**, 901 Marquette Avenue South, Suite 1300, Minneapolis, MN 55402; and Douglas Grawe, **GRAWE LAW, PLLC**, 800 Lone Oak Road, Eagan, MN 55121, for defendants.

This action arises out of lease agreements between Plaintiffs, a group of individual truck drivers, and Defendant VFS, Inc. ("VFS"), which provided that Plaintiffs would haul cargo for VFS in exchange for certain compensation. Plaintiffs bring this action

alleging fraud, conversion,[1] and breach of fiduciary duty against all Defendants, as well as breach of contract and violation of the Federal Truth-In-Leasing Regulations under 49 U.S.C. § 14704(a)(1), against VFS. Defendants bring a motion to dismiss Plaintiffs' fraud, conversion, and breach of fiduciary duty claims, and in the alternative bring a motion for a more definite statement. Because Plaintiffs' pleadings are insufficient with respect to the fraud and breach of fiduciary duty claims, the Court will grant Defendants' motion to dismiss these claims. The Court will deny Defendants' motion to dismiss the conversion claim and Defendants' motion for a more definite statement.

**BACKGROUND**

Defendant VFS is a federally regulated motor carrier that hauls freight in interstate commerce. (Compl. ¶ 23, May 17, 2012, Docket No. 1.) Defendant Warren Amundson is the chief executive officer and owner of VFS, and Defendant Donna Walraven is VFS's bookkeeper. (*Id.* ¶¶ 24-25.) The Plaintiffs are owner-operator truck drivers who were hired by VFS to haul freight. (*Id.* ¶¶ 28, 31.) The relationship between VFS and each Plaintiff is governed by separate lease agreements. (*Id.* ¶ 31.) Under the lease agreements, each truck driver agreed to lease his vehicle to and move freight for VFS in exchange for receiving a percentage of the gross revenue on the freight. (*Id.* ¶ 31, Ex. A.)

---

[1] Count Four of Plaintiffs' complaint is titled "Theft." However, the complaint alleges "theft" of personal property without referencing any state statutes such as Minn. Stat. § 604.24, which provides that "[a] person who steals personal property from another is civilly liable to the owner of the property." Because the complaint does not reference the civil theft statute, the Court will assume that Plaintiffs intended to allege a cause of action for common law conversion. Therefore, for purposes of this order, the Court will refer to Plaintiffs' Count Four as the "conversion claim."

Plaintiffs' claims generally stem from VFS's alleged failure to pay Plaintiffs the agreed compensation. (*Id.* ¶ 37.) Plaintiffs allege that VFS, Amundson, and Walraven understated the amount VFS billed to recipients of its freight, and therefore understated the compensation to which each Plaintiff was entitled. (*Id.* ¶¶ 50, 56-57, 62-63.) VFS then paid Plaintiffs the allegedly understated amounts. (*Id.* ¶¶ 55, 58, 63.) Plaintiffs further allege that Defendants' representations about compensation occurred in "periodic settlement statements" (*id.* ¶¶ 56-57) and "[t]hroughout the terms of the lease . . . verbally and in writing." (*Id.* ¶ 51.)

Plaintiffs' complaint alleges that the understated compensation amounts form the basis for claims of fraud, conversion, and breach of a fiduciary duty to accurately report Plaintiffs' compensation. (*Id.* ¶¶ 50-64.)[2] Defendants now move to dismiss Plaintiffs' fraud, conversion, and breach of fiduciary duty claims, and in the alternative seek a more definite statement.[3]

---

[2] Plaintiffs also bring claims for breach of contract and violation of federal regulations governing motor carriers against VFS that share a similar factual basis to the fraud, conversion, and breach of fiduciary duty claims. Because Defendants have not moved for dismissal with respect to the breach of contract and violation of federal regulations claims, the Court will not address them.

[3] Although the title of Defendants' motion papers, "Defendants' Motion to Dismiss or, in the Alternative, for a More Definite Statement and Defendant VFS, Inc's Motion for a More Definite Statement" makes it somewhat unclear whether VFS, in addition to Amundson and Walraven, is seeking dismissal of the fraud, conversion, and breach of fiduciary duty claims, the text of the motion papers themselves clarify that Defendants are in fact seeking dismissal of the fraud, conversion, and breach of fiduciary claims as to all Defendants. (Mot. to Dismiss, June 6, 2012, Docket No. 7.)

# ANALYSIS

## I. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Standard of Review

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

B.  **Personal Liability**

The Court must first determine whether Plaintiffs can properly seek to hold Amundson – a corporate officer and shareholder – and Walraven – a corporate employee – personally liable for actions they took while acting in those corporate roles.

1.  **Liability of Amundson**

"An officer and shareholder of a corporation cannot be held personally liable for the obligations of the corporation except in limited circumstances." *Universal Lending Corp. v. Wirth Cos.*, 392 N.W.2d 322, 326 (Minn. Ct. App. 1986). These circumstances include: (1) when the corporate entity is the alter ego of the shareholder and piercing the corporate veil is necessary to avoid injustice, *see Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997); (2) when the officer has personally guaranteed the corporation's obligations, *Universal Lending Corp.*, 392 N.W.2d at 326; and (3) when the officer has actually participated in misdeeds of the corporation, *see Ellingson v. World Amusement Serv. Ass'n*, 222 N.W. 335, 339 (Minn. 1928). Plaintiffs have not alleged that VFS is the alter ego of Amundson,[4] nor have they alleged that Amundson personally guaranteed the compensation obligations of VFS under the lease agreements. Therefore, in order to ascertain whether Plaintiffs properly seek to hold Amundson personally liable, the Court

---

[4] Defendants argue that Amundson cannot be liable because Plaintiffs have failed to plead facts establishing that VFS was the alter ego of Amundson. As explained below, it is not necessary to pierce the corporate veil to hold a corporate officer liable when there is no attempt to hold the corporate officer liable "solely because of his status as a stockholder or officer of the corporation." *In re Dougherty*, 482 N.W.2d 485, 490 (Minn. Ct. App. 1992). Rather, in such situations, liability is individual and based on tortious conduct in which the corporate officer personally engaged. *Id.*

must determine whether the complaint, if adequately pled, could allege causes of action against Amundson for his participation in the misdeeds of VFS.

"It is the universal rule that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor[.]" *Ellingson*, 222 N.W. at 339; *see also Arena Dev. Grp., LLC v. Naegele Commc'ns, Inc.*, Civ. No. 06-2806, 2008 WL 1924179, at *7 (D. Minn. Apr. 29, 2008) ("[U]nder Minnesota law corporate officers are liable for the torts they commit[.]"). In addition to the torts they individually commit, corporate officers can also be personally liable for torts committed by other corporate employees that the officers "participated in, directed, or w[ere] negligent in failing to learn of and prevent." *Morgan v. Eaton's Dude Ranch*, 239 N.W.2d 761, 762 (Minn. 1976) (footnote omitted).

Plaintiffs' complaint seeks to hold Amundson liable for fraud, conversion, and breach of fiduciary duty. The general rule holding corporate officers liable for their own torts applies to fraud as well as torts against personal property, such as conversion. *See Meyer v. Dygert*, 156 F. Supp. 2d 1081, 1086 (D. Minn. 2001) (fraud); *Holzer v. Tonka Bay Yachts & Marine Sales, Inc.*, 386 N.W.2d 285, 287 (Minn. Ct. App. 1986) (conversion). Additionally, one circumstance in which a corporate officer could owe a plaintiff a fiduciary duty is when the corporate officer has assumed an independent fiduciary duty toward the plaintiff. *See Vincent v. Beck*, C6-94-2636, 1995 WL 541470,

at *2-3 (Minn. Ct. App. Sept. 12, 1995). Breach of such a fiduciary duty is a tort[5] for which the corporate officer could be held personally liable.

The complaint alleges that "VFS, Inc., Warren Amundson, and Donna Walraven made false representations to each Plaintiff," that "Defendants, acting in concert with each other, understated each Plaintiff's compensation on periodic settlement statements in order to commit acts of theft of funds due to each Plaintiff," and that "Defendants owed Plaintiffs a fiduciary duty to accurately report charges billed by VFS, Inc. to its customers." (Compl. ¶¶ 50, 58, 62.) Thus, Plaintiffs appear to be alleging Amundson's personal participation in the alleged fraud and conversion, and do not seek to hold Amundson liable solely based in his capacity as VFS's owner and chief executive officer. Additionally, Plaintiffs appear to be alleging that each Defendant owed a fiduciary duty to Plaintiffs. Without addressing the sufficiency of the complaint's allegations in other respects, which will be discussed below, the Court finds that such allegations, if properly pled, could provide a proper basis for personal liability. Consequently, the Court finds that the complaint could properly seek to hold Amundson personally liable for his own tortious conduct.

### 2. Liability of Walraven

Defendants argue that Walraven cannot be liable for torts she may have committed while acting in the course and scope of her employment, because VFS would be

---

[5] *See* Restatement (Second) of Torts § 897 & cmt. B (1979) ("A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act."); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1007 (8th Cir. 2007) (applying the law for aiding and abetting a tort to claims for breach of fiduciary duty).

vicariously liable for such torts.  Therefore, Defendants argue that the Court must dismiss the complaint's allegations against Walraven.

"*Respondeat superior* is a common law doctrine 'whereby a master is liable for his servant's torts committed in the course and scope of his employment.'"  *Horras v. Leavitt*, 495 F.3d 894, 904 (8th Cir. 2007) (quoting *Burger Chef Sys., Inc. v. Govro*, 407 F.2d 921, 925 (8th Cir. 1969)).  Under the doctrine, the tortious conduct of a corporate employee can be imputed to a corporation, "[b]ut that liability is joint and several; the servant is not relieved."  *Id.*  (internal quotation marks omitted); *see also Kisch v. Skow*, 233 N.W.2d 732, 734 (Minn. 1975) ("In Minnesota, we have characterized the liability of master and servant . . . as joint and several.").  Therefore, simply because a corporation may be vicariously liable for its employee's allegedly tortious conduct, it does not follow that the employee is not liable for her own conduct.  *Horras*, 495 F.3d at 904.

The complaint alleges that Walraven made false representations concerning Plaintiffs' compensation, knew that such representations were false, and made the representations to induce Plaintiffs to continue transporting shipments for VFS.  (Compl. ¶¶ 50-54.)  The complaint also alleges that Walraven, acting in concert with the other Defendants, understated Plaintiffs' compensation in order to commit theft.  (*Id.* ¶¶ 57-58.)  Finally, the complaint alleges that all "Defendants," including Walraven, owed a fiduciary duty to Plaintiffs, and that Walraven breached that duty when she failed to accurately report charges billed by VFS and Plaintiffs' corresponding compensation.  (*Id.* ¶¶ 62-64.)  That Walraven's conduct was undertaken in the course of her employment does not relieve her of liability for allegedly tortious conduct.  Therefore, again without

addressing the sufficiency of the allegations in other respects, the Court finds that the complaint could properly seek to hold Walraven personally liable for her own tortious conduct.

### C. Count Four: Conversion

Under Minnesota law, conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use or possession." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotation marks omitted). "In order to recover [for conversion], plaintiff need[s] to prove only that he was the owner of the property taken, that it was taken by the defendant and converted, and that it had value." *Fryberger v. Anderson*, 260 N.W. 625, 626 (Minn. 1935).

Here, Plaintiffs have alleged that they had a property interest in the compensation at issue and were wrongfully deprived of that interest by the acts of the three Defendants. Specifically, Plaintiffs allege that they were owed certain compensation under the leases, that the three Defendants caused the amount of compensation to be understated, that Defendants paid Plaintiffs less than they were entitled to, and therefore Defendants misappropriated Plaintiffs' compensation. Assuming, as the Court must for purposes of a motion to dismiss, that the allegations in the complaint are true, the Court finds that these allegations are sufficient to state a claim for conversion. *See FCA Constr. Co., LLC v. Singles Roofing Co.*, Civ. No. 09-3700, 2011 WL 5275852, at *2 (D. Minn. Nov. 3, 2011) (denying a motion to dismiss a conversion claim where "plaintiff has alleged that it held a property interest in the money at issue and was wrongfully deprived of its property

interest in that money by [defendant]'s misappropriation of it"). Because the complaint contains sufficient allegations to maintain a cause of action for conversion against all Defendants, the Court will deny Defendants' motion to dismiss with respect to the Count Four.[6]

---

[6] It is possible that Plaintiffs' conversion claim could be dismissed because the heart of Plaintiffs' action is a breach of contract claim. "Minnesota law does not recognize an independent tort for conduct that merely constitutes a breach of contract." *First Integrity Bank, N.A. v. Ohio Cas. Ins. Co.*, Civ. No. 05-2761, 2006 WL 1371674, at *6 (D. Minn. May 15, 2006). Therefore, if "actions at the heart" of a tort claim "are identical to those which constitute a breach of contract," no separate tort cause of action exists. *Id.* "A tort is independent from a breach of contract if 'a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself.'" *Jones v. W. Union Fin. Servs., Inc.*, 513 F. Supp. 2d 1098 (D. Minn. 2007) (quoting *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. Ct. App. 1992)). Defendants have not, however, raised this argument as a basis for dismissal, and have not asked the Court to examine the relationship between the conversion claim and the breach of contract claim asserted against VFS in Count One of the complaint. Therefore, the Court will not decide whether Plaintiffs' conversion claim should be dismissed on the basis that the heart of Plaintiffs' conversion claim may be a breach of contract.

Additionally, it is possible that Plaintiffs' conversion claim could be dismissed because the claim alleges conversion of unspecified money. *See Halla v. NW Bank Minn., N.A.*, 601 N.W.2d 449 (Minn. Ct. App. 1999) ("Because cash is liquid and designed to be transferred, it is 'a subject of conversion only when it is capable of being identified, and described as a specific chattel.'" (quoting 89 C.J.S. *Trover & Conversion* § 23, at 541 (1955))); *see also United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 782 N.W.2d 263, 273 (Minn. Ct. App. 2010), *rev'd in part on other grounds*, 813 N.W.2d 49 (Minn. 2012) ("[T]he district court held that once funds are deposited into a bank, they become the property of the bank, so conversion cannot lie. We agree." (footnote omitted)). Again, however, Defendants have not raised this argument as a basis for dismissal. Nor have Defendants indicated whether the holdings of these Minnesota cases would apply here, where Plaintiffs claim conversion of an interest in money that they were entitled to but never received, as opposed to conversion of money already obtained. Because Defendants have not raised this argument, the Court will not decide whether Plaintiffs' conversion claim should be dismissed on the basis that Plaintiffs' claim is based on conversion of money.

**D.     Count Five: Fiduciary Duty**

Under Minnesota law, "[a] fiduciary relationship is characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." *Carlson v. Sala Architects, Inc.*, 732 N.W.2d 324, 330 (Minn. Ct. App. 2007) (citing *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)). Fiduciary relationships "transcend[] the ordinary business relationship which, if it involves reliance on a professional, surely involves a certain degree of trust and a duty of good faith and yet is not classified as 'fiduciary.'" *Id.* at 331.

Minnesota generally recognizes two categories of fiduciary relationships: "relationships of a fiduciary nature per se, and relationships in which circumstances establish a de facto fiduciary obligation." *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009). Per se fiduciary relationships, such as those between attorneys and clients, do not include the relationship between a commercial lessee and lessor. *See Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 914 (Minn. Ct. App. 2008) (listing per se fiduciary relationships). Whether a *de facto* fiduciary relationship exists is a question of fact, and evidence of financial control, assurances and invited consequences, and disparities in business experience may be sufficient to show the existence of such a fiduciary relationship. *See Toombs*, 361 N.W.2d at 809.[7] However, where parties to a business transaction merely "deal[] at

---

[7] *See also Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 342 (Minn. Ct. App. 1997); *Kennedy v. Flo-Tronics, Inc.*, 143 N.W.2d 827, 830 (Minn. 1966).

(Footnote continued on next page.)

arm's length . . . a fiduciary relationship cannot be said to exist between the parties." *Shema v. Thorpe Bros.*, 62 N.W.2d 86, 91 (Minn. 1953). Additionally, a fiduciary relationship is not established "by the plaintiff having faith and confidence in the defendant where the plaintiff should have known the defendant was representing an adverse interest." *Hope v. Klabal*, 457 F.3d 784, 791 (8th Cir. 2006)[8]; *see also S. Minn. Mun. Power Agency v. City of St. Peter*, 433 N.W.2d 463, 468 (Minn. Ct. App. 1988).

The only allegation that the instant complaint makes with respect to the existence of a fiduciary relationship between Plaintiffs and any of the Defendants is that "Defendants owed Plaintiffs a fiduciary duty to accurately report charges billed by VFS, Inc. to its customers, accurately report each Plaintiff's compensation on settlement statements, and ensure that each Plaintiffs' portion of revenue billed by VFS, Inc. was paid to each Plaintiff." (Compl. ¶ 62.) The complaint does not allege any facts – such as disparity in business experience or invited confidences – which would allow the Court to reasonably infer that any or all of the Defendants could be liable for breach of a fiduciary duty. Instead, the complaint offers only the conclusory label of a "fiduciary duty." The complaint also alleges with respect to breach of fiduciary duty that Plaintiffs "relied upon

_____
(Footnote continued.)

[8] The *Hope* case cited *Wells-Dickey Trust Co. v. Lien*, 204 N.W. 950, 952-53 (Minn. 1925), which concluded that a seller of property owed no fiduciary toward the buyer, even though the buyer and seller were longtime friends and the seller had served as the executor of the buyer's husband's estate, and *Stark v. Equitable Life Assurance Society*, 285 N.W. 466, 470 (Minn. 1939), which determined that an insurance agent did not have a fiduciary duty to a plaintiff who was illiterate, had limited business experiences, and was the agent's close friend and business acquaintance.

information reported to them by the Defendants." (Compl. ¶ 61.) At most, this allegation can be read as Plaintiffs imposing trust and confidence in Defendants, even though the facts in the complaint indicate that Defendants were representing an adverse interest. Such trust and confidence, absent other facts, is insufficient to establish a fiduciary duty under Minnesota law. *See Hope*, 457 F.3d at 791. Therefore, the Court will dismiss Count Five without prejudice, as Plaintiffs have not alleged sufficient facts to state a claim for breach of fiduciary duty against any of the Defendants.

## II. MOTION TO DISMISS FOR LACK OF PARTICULARITY

Defendants argue that Plaintiffs' fraud claim (Count Three) fails because the complaint does not meet the particularity requirement of Federal Rule of Civil Procedure 9. To properly plead a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, "the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotation marks omitted). In other words, to survive a motion to dismiss, plaintiffs "must typically identify the who, what, where, when, and how of the alleged fraud." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks omitted). The purpose of the heightened pleading standard is to give defendants an opportunity to respond quickly and accurately to damaging fraud allegations. *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 555 (8th Cir. 2006). "[C]onclusory allegations that a

defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (internal quotation marks omitted). But "Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the 'core' factual basis for the fraud claims." *McGregor v. Uponor, Inc.*, Civ. No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) (quoting *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 646 (8th Cir. 1995)).

In support of Plaintiffs' fraud claim, the complaint alleges that "[t]hroughout the terms of the leases between each Plaintiff and Defendants VFS, Inc., Defendants VFS, Inc., Warren Amundson, and Donna Walraven made false representation to each Plaintiff, verbally and in writing, concerning the amount of compensation that VFS, Inc. was had [sic] received and/or had billed to its customers on shipments transported by each Plaintiff." (Compl. ¶ 50.) The remainder of Count Three merely recites the elements of common law fraud referencing the "false representations" identified in Paragraph 50. (*Id.* ¶¶ 51-55.)

Here, although the complaint contains some of the necessary information,[9] the Court finds that the allegations of fraud are insufficient to meet the pleading standard in

---

[9] For example, the Court finds that the complaint contains enough particulars about the when of Defendants' purportedly fraudulent conduct to sufficiently apprise Defendants of the nature of Plaintiffs' fraud claims and allow Defendants to respond to the allegations. The complaint specifies that the fraudulent conduct occurred during the lease terms. Although this allegation does not contain specific dates, it is sufficient to notify Defendants generally of when the alleged fraud occurred. *See, e.g.*, *Carlson v. A.L.S. Enters., Inc.*, Civ. No. 07-3970, 2008 WL 185710, at *3 (D. Minn. Jan. 18, 2008) (finding sufficient a description of when fraud occurred where the complaint alleged that fraud had been occurring "on an ongoing basis" since the

(Footnote continued on next page.)

Rule 9(b). First, Plaintiffs have failed to identify which Defendant made the alleged false representations. "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Petersen v. England*, Civ. No. 09-2850, 2010 WL 3893797, at *10 (D. Minn. Sept. 30, 2010) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)).

> [W]hen a complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiff must take care to identify which of them was responsible for the individual acts of fraud. If the requirements of Rule 9(b) were otherwise, a defendant would be forced to guess which allegations in the complaint were properly pleaded against it, rendering it difficult (if not impossible) to adequately frame a response, which is precisely the problem that Rule 9(b) was designed to remedy.

*Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009) (citations and internal quotation marks omitted). Count Three does not meet Rule 9(b)'s particularity requirement because it identifies VFS, Amundson, and Walraven generally as making false representations, but does not identify each Defendant's role in any false representations, or identify which Defendant made any particular misrepresentation. (*See* Compl. ¶¶ 51-53 (discussing the "false representations made by the **Defendants**"

---
(Footnote continued.)

defendant began selling a certain product); *Solvay Pharms., Inc. v. Global Pharms.*, 298 F. Supp. 2d 880, 885-86 (D. Minn. 2004) (finding sufficient a fraud claim which alleged that defendants had been improperly marketing products for the past "several years").

(emphasis added)).)[10] Without knowing which Defendant is alleged to have made the misrepresentations in question, Defendants cannot properly respond to the complaint.

Second, the complaint fails to identify what statements constitute the alleged fraud, and where these representations were made. The complaint alleges only that Defendants "verbally and in writing" made misrepresentations "concerning the amount of compensation that VFS, Inc. was had [sic] received and/or had billed to its customers on shipments transported by each Plaintiff." (Compl. ¶ 50.) The complaint does not specify in what writings or oral communications these misrepresentations were made, what figures "concerning the amount of compensation" were misrepresented, or in what manner the figures had been misrepresented.[11] Such pleading is insufficient to meet the particularity requirement of Rule 9(b). *See In re Mirapex Prods. Liab. Litig.*, 246 F.R.D.

---

[10] *See also Carlson*, 2008 WL 185710, at *4 (dismissing a fraud claim where it was unclear "whether Plaintiffs allege that all Defendants, some Defendants, or only one Defendant made each of th[e] [fraudulent] statements, and thus it [wa]s equally unclear what role each Defendant played in the purported fraud").

[11] Plaintiffs argue that it was impossible for them to ascertain and plead "the precise date and amount of each false representation," because "VFS failed to provide copies of the rated freight bills to the Plaintiffs as it was required to do." (Pl.'s Memo. in Opp. to Mot. to Dismiss at 8, July 9, 2012, Docket No. 14.) But in order for Plaintiffs to prove common law fraud, they must have reasonably relied on a fraudulent misrepresentation. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000). If the alleged misrepresentations were never communicated to Plaintiffs, the Defendants could not have committed fraud as a matter of law. *See In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) ("[A] plaintiff must show that he or she **received** the defendant's alleged misrepresentation and relied on it." (emphasis added)). Therefore, Plaintiffs' argument fails to excuse them from the burden of pleading fraud with particularity on two levels. Either Defendants never communicated any false representations to Plaintiffs, in which case no fraud claim exists, or Defendants communicated false representations to Plaintiffs (in some form other than the freight bills that were allegedly never given to Plaintiffs) and Plaintiffs must describe those communications in their complaint. Finally, Defendants' attorney submitted an affidavit stating that the ten freight bills requested by Plaintiffs were sent to Plaintiffs' counsel on February 20, 2012, three months before the complaint was filed. (Aff. of Doug C. Grawe ¶¶ 2-3, July 16, 2012, Docket No. 19.)

668, 671 (D. Minn. 2007) (finding a fraud claim deficient which merely alleged that defendant "made false representations denying any link between [defendant's product] and compulsive gambling," because the complaint did not cite "[s]pecific statements or omissions").[12]

Although Plaintiffs need not plead every detail of the alleged fraud, the allegations must be sufficient to allow Defendants to respond. *See Evangelical Lutheran Church in Am. Bd. of Pensions v. Spherion Pac. Workforce LLC*, Civ. No. 04-4791, 2005 WL 1041487, at *3 (D. Minn. May 4, 2005) (explaining that although some of plaintiff's allegations "suffer[ed] from a lack of specification," the complaint "analyzed as a whole, adequately puts [the defendant] on notice of the particular instances of misrepresentation"). In the absence of allegations which specify which Defendant made the misrepresentations and identify the misrepresentations themselves, the Court finds that the complaint does not plead sufficient facts to allow Defendants to properly respond

---

[12] *See also BJC Health Sys.*, 478 F.3d at 917-18 (dismissing a fraud claim for lack of particularity where, although plaintiffs identified a specific actuarial analysis as the basis for their fraud claim, the complaint did "not specify where and how the analysis falls short"); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, Civ. No. 05-2310, 2007 WL 1242890, at *1 (D. Minn. Apr. 27, 2007) (dismissing a fraud claim where the plaintiff had "not identified with any specificity which provisions of the 'leases, bills, invoices and reconciliations' [were] alleged to be fraudulent"). In contrast, fraud claims which survive motions to dismiss specifically identify allegedly fraudulent statements, and where such statements were made. *See, e.g.*, *Blue Cross & Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, Civ. No. 11-2529, 2012 WL 1343147, at *3 (D. Minn. Apr. 18, 2012) (denying a motion to dismiss a fraud claim where the complaint identified the corporate documents which contained the alleged misrepresentations as well as "the precise alleged misrepresentations contained therein" and "alleged specifically what allegedly fraudulent communications each individual plaintiff had with Wells Fargo and the approximate time and date on which such communications took place"); *McGregor*, 2010 WL 55985, at *4 (finding sufficient a fraud claim which identified particular quotes from defendants' website and advertising brochures which plaintiffs claimed were misrepresentations); *Solvay Pharms.*, 298 F. Supp. 2d at 885-86 (finding sufficient a fraud claim which identified particular statements in promotional and marketing materials which were alleged to be false).

to the allegations. Because the complaint fails to plead fraud with particularity, the Court will dismiss Count Three as to all Defendants.

### III. MOTION FOR A MORE DEFINITE STATEMENT

Because the Court will deny Defendants' motion to dismiss with respect to Count Four, the Court will consider Defendants' alternative request for a more definite statement. Under Federal Rule of Civil Procedure 12(e) "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The motion for a more definite statement "must be made before filing a responsive pleading." *Id.* Because of the liberal notice-pleading standard governing federal pleadings "and the availability of extensive discovery, Rule 12(e) motions are disfavored." *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 644 (D. Minn. 1996). "Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Id.* (internal quotation marks omitted). Therefore, "[w]hen examining whether a more definite statement is required under Rule 12(e), the only question is whether it is possible to frame a response to the pleading." *Lyon Fin. Sers., Inc. v. MBS Mgmt. Servs., Inc.*, Civ. No. 06-4562, 2007 WL 2893612, at *9 (D. Minn. Sept. 27, 2007) (citing *Century '21' Shows v. Owens*, 400 F.2d 603, 607 (8th Cir. 1968)).

Because Defendants have filed an answer to Plaintiffs' complaint, their motion does not comply with the requirement in Rule 12(e) that such a motion be made "before filing a responsive pleading." (*See* Answer, June 6, 2012, Docket No. 6.) Furthermore, the fact that Defendants filed an answer indicates that Defendants' did not believe the

complaint to be truly unintelligible such that they could not frame a response. *See Lyon Fin. Servs. Inc.*, 2007 WL 2893612, at *9; *Powerlock Sys., Inc. v. Duo-Lok, Inc.*, 56 F.R.D. 50, 52 (E.D. Wis. 1972). Therefore, the Court will deny Defendants' motion for a more definite statement.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 7] is **GRANTED in part** and **DENIED in part** as follows:

   a. The motion is **GRANTED** as to Plaintiffs' claims for fraud (Count Three) and breach of fiduciary duty (Count Five), and these claims are **DISMISSED WITHOUT PREJUDICE**.

   b. The motion is **DENIED** as to Plaintiffs' claim for conversion (Count Four).

2. Defendants' Motion for a More Definite Statement [Docket No. 7] is **DENIED**.

DATED: January 14, 2013  
at Minneapolis, Minnesota.

                                                s/ John R. Tunheim  
                                                JOHN R. TUNHEIM  
                                                United States District Judge